UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OSCAR R. JONES,

    Plaintiff,

v.                                            Case No. 8:07-cv-02382-T-24-MSS

ASSET ACCEPTANCE, LLC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Plaintiff's and Defendant's cross Motions for Summary Judgment. (Doc. Nos. 10–11.) Plaintiff and Defendant have each filed a response contesting the Motion for Summary Judgment filed by the opposing party. (Doc. Nos. 12–13.)

**I. INTRODUCTION**

In Plaintiff's two-count Complaint, he alleges that Defendant discriminated against him based on his age, in violation of both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. ("ADEA"), and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01–.11. Defendant moves for Summary Judgment, claiming that Plaintiff executed a Release and Settlement Agreement ("Agreement") in which he waived his right to sue under either the ADEA or the FCRA, and that the Agreement bars the present suit. (Doc. No. 10.) Plaintiff denies that the Agreement contained a valid waiver and seeks Summary Judgment declaring the Agreement invalid as to the waiver of his ADEA and FCRA claims. (Doc. No. 11.)

## II.  STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id. (citation omitted).  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## III. BACKGROUND

Defendant, Asset Acceptance,  hired Plaintiff, Oscar R. Jones,  as a manager in October of 2003.  Plaintiff held the position of Assistant Vice President when Defendant terminated him on June 12, 2006.  (Compl., p. 2.)  At that time, Plaintiff was fifty-eight years old.  (Id.) Defendant replaced Plaintiff with a younger man.  (Compl., p. 3.)  Defendant claimed that Plaintiff's poor performance and leadership, as well as his division's poor financial record, motivated the termination.  (Compl., p. 2.)

After his termination, Plaintiff signed a Release and Settlement Agreement in exchange for a severance package.  (Doc. 10, p. 2; Doc. 11, p. 2.)  The Agreement provides:

> [Plaintiff agrees to] release, waive and discharge [Defendant] . . . from any and all causes of action, claims, rights, charges, suits, damages, [etc.] . . . including but not limited to:
>
> (a) claims arising under . . . the Age Discrimination in Employment Act of 1967 . . .; and/or
> (b) claims arising out of any other . . . state or local statute, law, constitution, ordinance, or regulation; and/or
> (c) any other claim whatsoever including, but not limited to, claims relating to . . . wrongful discharge; . . . [and] legal restrictions on the Company's right to terminate employees. . . .

(Def.'s Ex. B, p. 2.)

The Agreement further states that Plaintiff has been "advised to and . . . had the opportunity to consult with an attorney prior to executing [the] Agreement." (Def.'s Ex., p. 3.) Plaintiff understood that this clause meant that "if [he] want[ed] to see an attorney and seek his advice before [he] sign[ed] [the Agreement], to do so." (Pl. Depo, p. 40.) Further, the Agreement declares Plaintiff's unilateral right to revoke the Agreement within seven days of signing it. (Def.'s Ex., p. 3.) Plaintiff was given a copy of the Agreement, and Defendant allowed him twenty-one days to consider its terms before executing it. (Doc. No. 11, p. 4; Def.'s Ex. B, p. 3.) Plaintiff read the Agreement several times prior to signing it. (Pl.'s depo., p. 29.) Plaintiff signed the Agreement on July 3, 2006 and did not attempt to revoke the Agreement within the seven-day period. (Doc. No. 11, p. 9.)

Notwithstanding the Agreement, on March 1, 2007, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that his age motivated Defendant, at least in part, to terminate him. (Compl., p. 2.) Plaintiff filed the present suit after receiving a "Right to Sue" letter from the EEOC. (See Pl.'s Ex. A.)

Defendant moves for Summary Judgment on the ground that Plaintiff's signing of the

Agreement, which contains a valid release, precludes any suit against it under the ADEA or the FCRA.  (Doc. No. 10.)  Plaintiff moves for Summary Judgment regarding the validity of the waiver, contending that the Agreement does not operate as a waiver because his renunciation of rights was not made knowingly and voluntarily.  (Doc. No. 11, p. 2.)

## IV.  DISCUSSION

Plaintiff claims that the Agreement does not bar suit, either under the ADEA or the FCRA.  (Doc. No. 13.)  Instead, he claims that the purported waiver is void, because it does not meet the requirements of the ADEA for knowing and voluntary waiver.  (Doc. No. 11.)  Specifically, Plaintiff contends that Defendant: (1) failed to provide prior written notice to Plaintiff advising him to seek counsel before signing the Agreement, and (2) failed to state in the Agreement that it would not become enforceable until seven days after it was signed.  (Doc. No. 11.)  Plaintiff contends that, because the ADEA requires Defendant to provide both of these terms in writing, the waiver is void with regard to his claims under the ADEA.  Plaintiff further claims that because the FCRA is modeled after the ADEA and construed similarly, the waiver is also void as to his right to sue under the FCRA.

### A.  Waiver of Rights under the ADEA

The ADEA prohibits employment discrimination on the basis of age.  The Older Workers Benefit Protection Act ("OWBPA"), an amendment to the ADEA, provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary."  29 U.S.C. § 626(f)(1).  The OWBPA mandates that, "at a minimum," eight conditions be met before a waiver will be deemed to have been made "knowingly and

voluntarily." One of the eight provisions includes a requirement that the employee be "advised in writing to consult with an attorney prior to executing [a waiver] agreement." 29 U.S.C. § 626(f)(1)(E). A second provision requires that "[a waiver] agreement provide[ ] that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." 29 U.S.C. § 626(f)(1)(G).

The person asserting the waiver has the burden of proving its validity under the OWBPA. 29 U.S.C. § 626(f)(3). However, where an employer does not strictly comply with the requirements of the ADEA's waiver provisions, a waiver is not necessarily invalid if the deviation is only a deminimis technical one of form rather than function, and the deviation would not hamper the purpose of the OWBPA. American Airlines Inc. V. Cardoza-Rodriguez, 133 F.3d 111, 118 n.6 (1st Cir. 1998) ("In light of the OWBPA's imprecise terms, some violations may be so technical as to be deminimis, and thus may not invalidate an otherwise valid release of ADEA claims."); Raczak v. Ameritech Corp., 103 F.3d 1257, 1259, 1263 (6th Cir. 1997) (holding that where the OWBPA is "ambiguous, a rigid and mechanical interpretation of that provision is inappropriate" and using the "understandable to the average worker standard" as the "touchstone" for evaluating compliance with the OWBPA") (quotations omitted); Manning v. New York Univ., 2001 WL 962982 at *5 (S.D.N.Y.) ("strict interpretation [of the OWBPA] does not require placing form entirely over function and we must evaluate the circumstances surrounding each waiver in light of Congress' objectives embodied in the OWBPA.")

1.  Attorney Consultation

Plaintiff claims that the statement within the Agreement that he had been "advised to and

. . . had the opportunity to consult with an attorney prior to executing [the] Agreement" is, alone, insufficient to fulfill the requirement under § 626(f)(1)(E) of the OWBPA that he be "advised in writing to consult with an attorney prior to executing the agreement." (Doc. No. 11, pp. 6–7.) Rather, Plaintiff contends that the statute requires—and that the past-tense language of the Agreement suggests—that he was entitled to separate written notice before executing the agreement, encouraging him to seek counsel. (Doc. No. 11, pp. 6–7.) However, the plain language of the ADEA indicates that the employee need only be advised to seek an attorney before "executing" an agreement, not before receiving it. This advice must be "in writing," not necessarily in an independent writing. Therefore, there is no reason that a clear statement within a release agreement, provided long before the time at which the employee was required to execute that agreement, could not serve as sufficient written notice.

Here, Plaintiff received the Agreement in writing twenty-one days before he was required to execute it.[1] (Def.'s Ex. B, p. 3.) Plaintiff read the contract multiple times and understood it before he executed it. (Pl.'s depo., pp 29.) Further, he was able to understand that the clause contained in the Agreement meant "if [he] want[ed] to see an attorney and seek his advice before [he] sign[ed] [the Agreement], to do so." (Pl. Depo, p. 40.) Although Plaintiff claims that at the time of the Agreement he viewed the clause as mere legal jargon, he demonstrated in his deposition that he was able to understand its meaning after a cursory reading. To accept Plaintiff's argument that a clause is not plainly understandable to the average person merely

---

[1] This is unlike Cole v. Gaming Entertainment LLC., 199 F. Supp. 2d 208 (D. Del. 2002), in which the court declared a release agreement invalid when the advice to seek counsel was stated only in the release document and the employee was required to execute that release by the following business day.

because it references the law, even though the reader has the capability to comprehend it upon brief examination, would be to void any waiver of a legal right for being incomprehensible.

As admitted by Plaintiff in his deposition, the language giving notice that Plaintiff should seek counsel prior to executing the Agreement is sufficiently clear. It was also given to Plaintiff in writing and with enough time that he was able to read and act on that advice. Thus, under these circumstances, the clause in the Agreement counseling consultation with an attorney is sufficient to meet the requirements of the OWBPA.

### 2. Date of Enforceability

Plaintiff further claims that the Agreement clause notifying Plaintiff of his unilateral right to revoke the terms of the Agreement within seven days of signing it fails to meet the requirement in 29 U.S.C. § 626(f)(1)(G) that "the agreement provide[ ] that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired." Because the Agreement fails to state that it would not become enforceable until the seven-day revocation period expired, Plaintiff claims that it violates the OWBPA and therefore the waiver is void.

However, grammatical deconstruction of the plain language of the statute suggests that the Agreement is only required to state the employee's ability to revoke the terms within seven days of signing it; it does not requires that the Agreement also state the contract would be unenforceable during that period.[2]  The Court is aware of no decision interpreting the OWBPA

---

[2]The comma preceding the word "and" indicates a compound sentence in which each clause can stand independently.  See Webster's II New Riverside Dictionary 292 (1988). Thus

7

that holds to the contrary. This understanding appeals to common sense in that an employee's revocation requires action by the employee, and thus, for the power of revocation to be meaningful, the employee must be apprised of it. In contrast, the waiver's unenforceability during the seven-day period is mandated by the OWBPA and protects the employee without requiring any knowledge or action on his part. Further, acknowledgment in the Agreement of Plaintiff's ability to revoke his consent within the seven-day period puts Plaintiff on notice that Defendant could not bind Plaintiff to the Agreement during that period. Further, even if Defendant were required to include a notice of unenforceability, in this case the error is merely slight and technical, resulting from ambiguity within the statute and not hampering the intent of the OWBPA. See American Airlines Inc., 133 F.3d at 118 n.6; Raczak, 103 F.3d at 1263; Manning, 2001 WL 962982 at 5. With or without an explicit statement of unenforceability, Plaintiff had notice that Defendant could not bind Plaintiff to the Agreement for the seven-day period.

Because the OWBPA does not require notice of unenforceability of a waiver agreement when the agreement states that the employee may revoke his consent within seven days of execution—and, even if notice were required, its absence in this case is only a slight technical deviation in form rather than function—the absence of this notice does not void Plaintiff's waiver of his right to sue under the ADEA.

### B.  Waiver of Rights under the FCRA

Like the ADEA, the FCRA prohibits age discrimination. Because the FCRA is modeled

---

the second clause, regarding the enforceability of the agreement is separate from the first clause discussing written notification.

on federal discrimination statues, "case law interpreting Title VII and the ADEA is applicable to cases arising under the [FCRA]." Brown Dist. Co. of West Palm Beach v. Marcell, 890 So.2d 1227, 1230 n. 1 (Fla. App. 2005) (citation omitted). However, while the Court may accept guidance from cases interpreting Title VII and the ADEA in order to interpret commonalities with the FCRA, the Court may not judicially incorporate all federal legislation associated with Title VII and the ADEA into Florida law. The ADEA, notably, required an amendment to incorporate the eight pre-requisites to waiver. The FCRA has no such amendment. Where the statutes themselves differ, the Court must both remark and respect those differences, not obliterate or ignore them.

Thus, in determining whether waiver is valid under the FCRA, it is appropriate to look to judicial standards for evaluating waivers under Title VII, which contains no waiver amendment. Under Title VII, the Court uses a totality-of-the-circumstances test to evaluate whether waiver was knowing and voluntary, and therefore valid. Beadle v. City of Tampa, 42 F.3d 633, 635 (11th Cir. 1995). Under a totality-of-the-circumstances test:

> [The Court considers] plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

Id.

Here, Plaintiff is well-educated and experienced, having completed a Bachelor's Degree in education and business, as well as some graduate course work toward a Masters of Business Administration. (Pl.'s depo., p. 3). Plaintiff also held professional positions of substantial

9

responsibility within multiple companies, including his position with Defendant, which required the review of real estate contracts. (Pl.'s depo., pp. 19, 22–24.) Plaintiff was given twenty-one days to read and reflect on that language as well as consult an attorney if he chose to do so. (Pl.'s depo., p. 40.) Further, Plaintiff was given seven additional days to revoke the Agreement after executing it. (Def.'s Ex. 3, p. 3.) The Agreement states in clear terms that he is releasing Defendant from state law claims and made clear to Plaintiff that he should speak to an attorney if he was so inclined. (Id. at 2; Pl.'s depo., p. 40.) He received a severance package in exchange for the Agreement, to which Plaintiff was not otherwise entitled. (Id. at 1.) Therefore, this Court finds that Plaintiff's consent to the Agreement waiving his right to sue under the FCRA was knowing and voluntary based on the totality of the circumstances. Thus, the waiver of Plaintiff's right to sue under the FCRA is valid, and Plaintiff's claim is barred.

## V.  CONCLUSION

Accordingly, it is ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**, and Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED.**  The Clerk is directed to enter judgment in favor of Defendant and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of August 2008.

SUSAN C. BUCKLEW
United States District Judge